# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION

| | |
|---|---|
| Marc V. Milline | § |
| Plaintiff, | § Case No. |
| - vs - | § 8:07-CV-00463-T-30mss |
| FIRST NLC FINANCIAL SERVICES, LLC, | § |
| WILSHIRE CREDIT CORPORATION, | § |
| a Nevada Corp., LASALLE BANK, N.A. AS | § |
| TRUSTEE FOR THE MLMI TRUST | § |
| SERIES 2006 – HE4, ANCHOR MORTGAGE | § |
| a/k/a ANCHOR LOANS, INC., and | § |
| JOHN & JANE DOES 1 – 10 | § |
| Defendants | § |

## VERIFIED COMPLAINT FOR DAMAGES

## JURY TRIAL DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE

Plaintiff Marc V. Milline, (hereinafter "Plaintiff") complains and alleges as follows:

### I. Preliminary Statement

1. This defensive affirmative complaint is brought by the Plaintiff against First NLC Financial Services, LLC, Wilshire Credit Corporation, LaSalle Bank, N.A. as Trustee for the MLMI TRUST SERIES 2006 – HE4, Anchor Mortgage; a/k/a Anchor Loans, Inc., and DOES 1 – 10 (collectively "Defendants"): a) to enforce a rescission by way of

recoupment and set-off; b) for reimbursement of all fees and costs paid and expended in a consumer credit transaction pursuant to violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), and its implementing regulations at 12 C.F.R. § 226 *et seq.* ("Reg. Z"); c) for violations of the Real Estate Settlement Procedures Act, codified at 12 U.S.C. § 2605 ("RESPA"), and the requirements imposed by Congress in 1990; the Cranston-Gonzalez National Affordable Housing Act, Pub. L. No. 101-626, 104 Stat. 4079 (1999), punitive damages; d) for serious breach of Defendants' fiduciary duties to rescind and cancel a security interest, wrongful foreclosure, costs, attorneys fees and such other statutory, actual, and declaratory relief as may apply against Defendants collectively pursuant to TILA, and RESPA.

2. A rescission action may be brought against an assignee, regardless of whether the assignee is a "creditor" or whether the violation was apparent on the face of the disclosure statement under 15 U.S.C. § 1641(c).

3. TILA provides that "any civil action… which may be brought against a creditor may be maintained against any assignee of such creditor" if the violation is apparent on the face of the documents, 15 U.S.C. § 1641(c) and 15 U.S.C. § 1641(e) for transactions secured by real property. Failure to provide TILA disclosures correctly made including any standardized documents normally transferred in the course of an assignment or by their absence among documents assigned is sufficient to put an assignee on notice of potential violations, *In re Pinder*, 83 B.R. 905 (Bankr.E.D. Pa. 1988).

4. It must be noted that 15 U.S.C. § 1641(e) does not limit the documents on which the assignee liability can be based even though it includes a specific list of documents that the assignee must examine. The absence of such a restriction in contrast to the general description of relevant documents that the assignee examined provided under 15 U.S.C. § 1641(a) will depend on how many documents the creditor assigned but in no way does it

shield the assignee from liability by failing to obtain those documents from the original creditor.

5. The Trustee, LaSalle Bank, N.A., and Defendants are all proper parties to be sued for claims arising out of the transaction when the consumer is in an affirmative or defensive position, and whether asserting a rescission claim under TILA, Reg. Z, and/or RESPA.

## II. Parties

6. Plaintiff Marc V. Milline is a consumer and natural person as that term is defined under 15 U.S.C. § 1602(h). Plaintiff is a citizen domiciled here in Florida, the owner of the principal dwelling known as 407 Knollwood Dr., Davenport, Florida 33837 (the "Property"), and at all times relevant and material hereto, resides on the Property as his family home.

7. Defendant First NLC Financial Services, LLC is the originator of the transaction and a creditor as that term is defined under 15 U.S.C. § 1602(f) and 12 C.F.R. § 226.2(a)(17) and at all times relevant hereto is regularly engaged in the business of extending consumer credit for which a finance charge is or may be imposed and is payable in more than four installments by written agreement. This Defendant may be served with service of process by serving its statutory agent and managing officer in charge c/o Jeffrey Henschel, 700 W. Hillsboro Blvd., Bldg. 1, Suite 204, Deerfield Beach Florida 33441.

8. Defendant WILSHIRE CREDIT CORP. (hereinafter "Wilshire") is a Nevada Corporation, doing business in Florida, with a registered principal office designated in Portland, Oregon. This Defendant may be served with service of process by serving its statutory agent in Florida c/o CORPORATION SERVICE CO., 1201 Hays St., Tallahassee, Florida 32301 and by serving its officer in charge under Oregon statutes at P.O. Box 8517, Portland Oregon and ATTN: Jay Memmott, 14523 SW Millikan Way, Suite 200, Beaverton, Oregon 97005.

9. Defendant LaSalle Bank, N.A. is acting as a Trustee for the true owners of this obligation, securitized and sold onto the secondary mortgage market and claims ownership and possession of the promissory note by virtue of its representation to the state court judicial proceeding. Further, this entity claims they lost the note and are not in custody or control of said note. This Defendant may be served with service of process by serving its statutory agent in Florida c/o CT CORPORATION SYSTEM, 1200 S. Pine Island Rd, Plantation Florida 33324, and by serving the officer in charge at its principal office LaSalle Bank, N.A. ATTN Trustee for the the MLMI TRUST SERIES 2006 – HE4, 135, South LaSalle St., Chicago Illinois 60603.

10. Defendant Anchor Mortgage; a/k/a Anchor Loans, Inc. has a principal office in California and is duly registered to do business in this forum state of Florida. This Defendant may be served with service of process by serving its statutory agent in Florida c/o FLORIDA COMPLIANCE SPECIALIST, INC., 2331 Hansen Place, Tallahassee, Florida 32301 and by serving its officer in charge c/o Anchor Loans, Inc., ATTN: Daniel Harrington, CEO, 1299 Ocean Ave., Suite 323, Santa Monica, California 90401.

11. Defendants Does 1-10 are involved in the instant case and transaction and are currently unknown to Plaintiff. Said entities will be joined upon further discovery of their true nature and liability once these facts are known and supported by competent evidence.

### III. Jurisdiction/Venue

12. This Court has Jurisdiction in this proceeding under 28 U.S.C. § 1331 as follows: a) pursuant to 15 U.S.C. § 1640(e) for TILA claims; b) pursuant to 12 U.S.C. § 2614 for RESPA claims; and c) pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction of Plaintiffs' state law claims as they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution. The Court has authority to issue a declaratory judgment by

virtue of 28 U.S.C. § 2201. Furthermore, counts arising under contract, common law, and the law of conveyances in real property are properly asserted under this Court's pendent jurisdiction.

13. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 generally because the real property and all, or a substantial portion, of the events and claims (which form the subject of this suit) are situated or occurred in the Middle District of Florida. Further, communications notifying Plaintiff of a Complaint Reestablishment of Lost Promissory Note, and Mortgage Foreclosure under the security instrument allegedly conveyed and enforced by Defendants occurred in this District.

### IV. Conditions Precedent

14. All conditions precedent have been performed or have occurred and TILA and RESPA violations may now be asserted defensively due to the judicial foreclosure filing as a recoupment or set-off pursuant 15 U.S.C. 1637 *et seq*. "This subsection [providing for the one year statute of limitations] does not bar a person from asserting a violation of this subchapter in an action to collect a debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action" (15 U.S.C. § 1640[e]), *Delta Funding Corp. v. Murdaugh*, 6 A.D.3d 571, 774 N.Y.S. 2d 797(2nd Dept. 2004); *McNinch v. Mortgage America, Inc.* (*In re McNinch*), 250 B.R. 848 (Bankr. W.D. Pa. 2000).

15. The mere loss of a statutory right to disclosure is an injury that gives the consumer standing for Article III purposes, *DeMando v. Morris*, 206 F.3d 1300 (9th Cir. 2000).

16. Plaintiff has standing as of the date of the contract and where the contract is a federally related mortgage transaction (hereinafter the "Transaction") governed by TILA and due to the judicial foreclosure filing entitled "Complaint" filed in the Circuit Court for Polk County, Florida, a true and correct copy of which is attached hereto by reference as

PLAINTIFF EXHIBIT 1.

## V. Statement of Facts

17. On or about May 11, 2006, Plaintiff submitted an application to a Broker, Defendant Anchor Mortgage; a/k/a Anchor Loans, Inc. (hereinafter the "Broker") to refinance and consolidate a previous mortgage loan and cash out the maximum appraised value of the Property.

18. Plaintiff agreed verbally to compensate the Broker as his agent for procuring the best possible mortgage loan.

19. Plaintiff and the Broker agreed that the Broker's compensation was to be allocated as up front fees deducted from the mortgage loan proceeds, subject to the instant matter.

20. The Broker did not discuss any prepayment penalty or provide any Variable Rate Disclosure at the time of application.

21. The Broker in concert with and pursuant to some business relationship with the original lender, Defendant First NLC Financial Services, LLC, processed the mortgage loan documents.

22. The purported closing (hereinafter the "Closing") took place at the Plaintiff's home with an alleged notary public and at the time of such purported Closing, Plaintiff signed a large stack of paperwork and documents associated with the mortgage loan subject to the instant action.

23. Plaintiff was not given any documents to review before the signing and did not have an opportunity to fully review each and every page before any signing.

24. The documents were not explained to me in any fashion, but merely put before me to sign.

25. I was encouraged by the representative agent at the time of signing to sign all documents as quickly as possible and discouraged from reading and evaluating said documents as

this would delay the time needed to complete the signing.

26. Subsequent to the Closing at my home, I reviewed the mortgage loan documents provided, true and correct copies of are attached hereto and incorporated herein by references as the following exhibits:

    a) an "Adjustable Rate Note" (PLAINTIFFS EXHIBIT 2);

    b) a security instrument entitled "MORTGAGE" (PLAINTIFFS EXHIBIT 3);

    c) a "Truth-In-Lending Disclosure Statement" (PLAINTIFFS EXHIBIT 4);

    d) an "Adjustable Rate Rider" (PLAINTIFFS EXHIBIT 5); with

    e) a "Prepayment Rider" (PLAINTIFFS EXHIBIT 6);

    f) a "HUD – 1 Settlement Statement" (PLAINTIFFS EXHIBIT 7);

    g) a "Good Faith Estimate" (PLAINTFFS EXHIBIT 8);

    h) a "NOTICE OF RIGHT TO RESCIND," (PLAINTIFF EXHIBIT 9);

    i) a copy of a "Uniform Residential Application," (PLAINTIFF EXHIBIT 10); and including but not limited to various other documents.

27. Upon later review, the document entitled "NOTICE OF RIGHT TO RESCIND," was signed and I also noticed it stated that I acknowledge receipt of two copies each of said Notice and this is simply false. I only received the one signed notice.

28. Plaintiff did not receive any counseling from the Broker about the implications of how a maximum interest rate would affect payments or an Adjustable Rate Mortgage brochure and HUD booklet describing the transaction subject to the instant action.

29. The federally related mortgage transaction at the root of this case was not created, or entered into, to finance the acquisition or initial construction of Plaintiffs' principle dwelling and all failed in one or more material respects to disclose to Plaintiffs in a form and manner required by applicable statute and regulation, the true cost of the credit transaction (hereinafter the "Transaction").

30. The Transaction required Plaintiff to pay money arising out of a transaction in which money, property, or goods and services were the subject thereof and the same were primarily for personal, family and household purposes.

31. The Transaction is a Consumer Credit Transaction as that term is defined under 15 U.S.C. § 1602(e), (h) and 12 C.F.R. § 226.2(a).

32. The Transaction is a Closed-end Credit Transaction as that term is defined in 12 C.F.R. § 226.2(10) where a security interest was retained in favor of Mortgage Electronic Registration Systems, Inc. "acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."

33. PLAINTIFF EXHIBT 7 indicates on Line 808 a "Broker Fee to Anchor Mortgage of $3,787.00," and seemed reasonable to the Plaintiff for services, value, and facilities provided by the Broker, though the Closing took place in a rushed manner at Plaintiff's home.

34. PLAINTIFF EXHIBT 7 also indicates on Line 809 an "Indirect Broker Compensation to Anchor Mortgage, POC (L) $2,992.00.

35. A "POC" is a Yield Spread Premium ("YSP") and a lender's payment to a mortgage broker for increasing the loan interest to a rate above "par," which is a rate higher than the rate at which the lender would otherwise be willing to make the loan.

36. This payment for mortgage loan referrals generally supplements the fee already agreed upon, and being paid, by the Plaintiff to the Broker for the Broker's services, goods, or facilities.

37. The Broker, unlawfully received a payment outside of the Transaction to compensate the Broker for selling, or otherwise transferring, this Transaction at a higher interest rate than the Plaintiff could have otherwise obtained in the marketplace.

38. The payment provided by Defendants to the Broker is a finance charge as that term is

defined under TILA, and a kickback or referral fee, a prohibited benefit to the Broker, and clearly does not improve the Plaintiff's position but instead unlawfully inflates the costs of homeownership.

39. The Department of Housing and Urban Development clearly states that "any and all broker compensation connected with the loan is in fact a cost to the Borrower."

40. Further, PLAINTIFF EXHIBT 7 also indicates the following Lines as fees inclusive and material to this Transaction:

- 803 Funding Fee… $8.50
- 804 Tax Service Fee… $65.00
- 805 Tax Service Fee Document Prep Fee… $75.00
- 806 Lifetime Flood Certification… $2.00
- 807 Administration Fee… $899.00
- 808 Broker Fee… $3,787.00
- 811 Initial Flood Certification… $9.00
- 901 Interest from 5/24/06 to 6/1/06 @ $88.5138/day… $708.11
- 1101 Settlement or closing fee… $225.00
- 1102 Abstract or title search… $225.00
- 1103 Title examination… $225.00
- 1111 Recertification Fee… $125.00
- 1112 Courier Fee… $95.00
- 1113 ALTA 6 VRM… $25.00
- 1301 File Scan Fee… $19.50
- 812 Doc Delivery Fee… $40.00
- 1114 8.1 Environmental Endorsement… $25.00
- 1115 FL9 Comprehensive Endorsement… $157.10

- 1116 ALTA 5.1 PUD...           $25.00

41. The total of these charges is equal to $6,740.21 and are finance charges as that term is defined under TILA and Reg. Z, § 226.4 and were imposed by Defendants incident to the extension of credit were not disclosed to the Plaintiff properly resulting in an inaccurate material disclosure compared to the actual material "Finance Charges" disclosed on PLAINTIFF EXHIBIT 4 and are understated by the difference of these finance charge amounts.

42. Lines 1102 and 1103 for Abstract or title search and Title examination are unreasonable and not bona fide and exceed the actual cost of these services, thus are finance charges.

43. Specifically, the final Truth in Lending Disclosure Statement identifies the "Amount Financed" as $293,090.89 and was computed by subtracting the finance charges from the loan principal imposed by Defendants payable directly by Plaintiff as a condition of the Transaction, that is $299,200.00 - $6109.11 = $293,090.89, i.e., $6109.11 of computed finance charges disclosed.

44. The difference of actual finance charges imposed as documented on the TILA Disclosure Statement, and materially required by 15 U.S.C. § 1605(a); Reg. Z § 226.4, and as compared to the indicated amounts on the HUD – 1 Settlement is $6740.21 – $6109.11 = $631.10 of understated finance charges not inclusive of the $2,992.00 Indirect Broker Compensation paid outside of closing as a finance charge.

45. Plaintiff examined such charges after a reasonable investigation and sent a valid rescission notice and qualified written request as these terms are defined under TILA and RESPA to the originator and the first servicer, OCWEN LOAN SERVICING, LLC, copies attached hereto and incorporated herein by references as PLAINTIFF EXHIBITS 11, and 12 respectively.

46. Plaintiff now disputes any alleged default due to rescission of the Transaction and have requested a full accounting and credit of all previous payments so that Plaintiff may tender any balance and extinguish the Transaction by operation of law.

47. Plaintiff was induced into entering into this Transaction without the proper opportunity to evaluate the costs and implications of thereof.

48. The Transaction was initiated without proper evaluation of Plaintiff's ability to pay and Plaintiff was unable to fully pay the monthly payment after five (5) months resulting in what has been deemed a default by Defendants.

49. Due to the judicial foreclosure for a closed-end real estate secured transaction, the tolerance level for understated Finance Charges is $35.00 pursuant to 15 U.S.C. § 1635(i)(2).

50. As of this date, all Defendants have been made aware of the TILA violations and have utterly failed to take any action to invalidate the security instrument or rescind.

51. The foregoing acts and omissions of the Defendants were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of the rights of the Plaintiff.

52. Defendants knew or should have known based on the face of all material documents in this matter that the originator is compensating this Broker with illegal kickback fees for selling mortgage loan transactions at an otherwise higher interest rate than the Plaintiff could obtain and that the material disclosures are inaccurate.

53. Plaintiff has a continuing right to rescind the Transaction until the third business day after receiving both the proper Notice of Right of Rescission and delivery of all "material" disclosures correctly made in a form the Plaintiff may keep pursuant to 15 U.S.C. § 1635(a) and Reg. Z § 226.23(a), and the three-day right has not expired.

54. The inaccuracy of the material disclosures indicated and the failure to provide two notices of the Plaintiff's right to rescind statutorily extends Plaintiff's Right to Rescission.

## VI. Claims for Relief

### Count 1 – TILA Rescission & Recoupment

55. Plaintiff re-alleges and incorporates herein the allegations contained in the preceding paragraphs inclusive above.

56. As a result of Defendants failure to provide accurate 'Finance Charges,' and 'Amount Financed' disclosures, and failure to provide all material disclosures correctly with a proper Notice of Right of Rescission described above, Plaintiff is entitled to, and exercised his right of rescission of the Transaction.

57. Rescission of the Transaction extinguishes any liability Plaintiff may have had to Defendants for finance or other charges arising from the Transaction.

58. Defendants failure to take action to reflect the termination of the security interest in the Property within twenty (20) days of the rescission of the Transaction releases Plaintiff from any liability whatsoever to Defendants arising from the Transaction.

59. Defendants have a fiduciary duty and obligation to perform upon notice of rescission by canceling this specific Transaction as well as any enforcement thereof. Accordingly, any alleged security instrument is void and unenforceable under 15 U.S.C. § 1635(b).

60. Defendants had twenty-days (20) to refund or credit the alleged account all monies paid and to void the security interest and Defendants have failed in their obligation to perform this duty and make a tender offer, thus the Defendants have ignored the rescission notice and forfeited their right to receive any tender amount whereby the property implicitly vests in the Plaintiff.

61. Defendants performance is a condition precedent to Plaintiff's duty to tender and failure

to respond gives rise to statutory and actual damages under 15 U.S.C. § 1640.

## Count 2 – TILA Recoupment & Set-off

62. Plaintiff re-alleges and incorporates herein the allegations contained in the preceding paragraphs inclusive above.

63. The original payee of the note and beneficiary of all other documents at a purported Closing with Defendants acted in contravention of TILA 15 U.S.C. § 1601 *et seq.* and Reg. Z in the following particulars, each and all of which may be asserted now affirmatively and defensively by Plaintiff as a result of the judicial foreclosure.

64. The TILA disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:

   a) By failing to provide the required correct disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b);

   b) By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a);

   c) By failing to include in the finance charge certain charges imposed by Defendant payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d);

   d) By failing to properly and accurately disclose the Amount Financed;

   e) Defendants failed to provide Plaintiffs with the required 3 day cooling off period prior to the signing of the loan documents contrary to under Reg. Z, Part 226 and 15 U.S.C. § 1601 *et seq.*;

   f) Defendants failed to provide and include in the loan documents two (2) copies of notices of the right to cancel or rescind, a violation under Reg. Z §§ 226.17(a)(1),

226.15(b) and Reg. Z 226.23(b);

g) Defendants failed to properly provide Plaintiff with the right to cancel signed by Plaintiff, a violation pursuant Reg. Z § 226.18 *et seq.*;

h) Defendants failed to provide Plaintiff with mandatory variable rate disclosures at application and any disclosure provided at the purported closing fails to conform with Model Form H-14 contrary to 15 USC § 1638(a)(14), Z § 226.19(b) Z § 226.19(b); i.e., Defendants failed to provide Plaintiff with any required HUD booklet on Adjustable Rate Mortgages within 3 days of application, contrary to Reg. Z § 226.19(b). This violation should give rise to both statutory and actual damage remedies because the required variable rate disclosures should be considered an integral part of the disclosure of the APR;

i) Defendants failed to provide to Plaintiff all general disclosures with respect to timing and form in violation of 15 U.S.C. § 1638(a) *et seq.*, Reg. Z, § 226.17(b), 15 U.S.C. § 1638(b);

j) Defendants failed to provide Plaintiff with accurate disclosures relating to the consumer credit transaction in the manner required by law, clear and conspicuous, a violation under Reg. Z § 226.17(a) (1);

k) The Defendants failed to secure Plaintiffs signature on the HUD-1 or TILA disclosure forms regarding whether the Plaintiffs wanted an itemization of the disclosures in violation of 15 USC § 1638(a)(2)(B);

l) By failing to disclose that Yield Spread Premium was included in the Finance Charge. A Yield Spread Premium is considered a cost of credit by Reg. Z § 226.4(a), and must be included in the finance charge disclosure because it is a charge imposed directly or indirectly by the creditor and is incident to, or a condition of, the extension of credit. A) Reg. Z § 226.4(a)(1) states that the

lenders who impose other fees passed on to third parties directly or indirectly (if it is the Defendants who require the services) must disclose such fees;

m) By failing to provide an example and the earliest time the maximum rate could be imposed to disclose the "worst case" so as to enable Plaintiffs to know the maximum payments they will have to make if rates increase sharply contrary to Reg. Z § 226.19(b)(2)(viii)(A), i.e.; Defendants must disclose to Plaintiffs the maximum periodic payment that would be required when/if the maximum rate for each payment option is in effect;

n) By failing to provide the required statement on the disclosure form explaining to Plaintiffs how to calculate their actual monthly payment for a loan amount other than $10,000.00 pursuant to Reg. Z § 226.19(b)(2)(ix) (Defendants must demonstrate how to make such calculation, based on the history of the specific index or formula to be used in the loan program and the index values used in the example must reflect the most recent fifteen years of index values pursuant to Reg. Z § 226.19(b)(2)(viii)(A));

o) By failing to provide at the time of application a fifteen-year historical table, based on an assumed $10,000 initial extension of credit and showing how the APRs and payments would have been affected by the index value changes under the plan pursuant to 15 U.S.C 1638, and by further failing to provide a Model Form H-14 under Reg. Z § 226.19(b)(2) nor a model clause such as H-4;

p) By failing to provide a notice to Plaintiffs that disclosure forms are available for the Defendants other ARM loan programs if in fact such programs are available for closed-end ARM programs, Reg. Z § 226.19(b)(2)(xiii);

q) By failing to direct Plaintiffs to ask for current rate information, Defendants violated Reg. Z § 226.19(b)(2)(iv) as disclosure forms can be preprinted making

rated information out of date, Plaintiffs must be told to ask about the current index value, margin, discount or premium (if applicable) and the APR;

### Count 3 – RESPA Claims and Recoupment

65. Plaintiffs incorporate each paragraph set forth above as if fully stated herein.

66. Plaintiff's RESPA claims, including Defendants continuing failure to provide mandatory material disclosures, are so closely related to the Transaction, that they form the same basis and subject of claims set forth herein.

67. Defendants failed to properly disclose a Yield Spread Premium ("YSP") to Plaintiff (and the finance charge associated therewith) and Defendants payment of the YSP constituted an illegal referral fee or "kickback" in violation of 12 U.S.C. §2607(a).

68. Defendants failed to provide that the YSP was included in the Finance Charge. A YSP is considered a cost of credit by Reg. Z § 226.4(a), and must be included in the finance charge disclosure because it is a charge imposed directly or indirectly by the creditor and/or is incident to, or a condition of, the extension of credit. Reg. Z § 226.4(a), and Reg. Z § 226.4(a)(1) states that a Defendant who imposes other fees which are passed on to third parties, directly or indirectly, must disclose those fees if it is the Defendants who require the services.

69. Defendants failed to provide the Borrower the opportunity to put the YSP in the up front Broker Fee, to deceitfully hide the profit obtained over the life of the Transaction.

70. Defendants are liable to the Plaintiffs pursuant to 12 U.S.C. § 1207(d) for three times the amount paid for this settlement service, plus attorney fees, and costs.

WHEREFORE, as a result of the violations of federal the Acts above and Regulation Z, Plaintiff prays for judgment against Defendants as follows:

    1.    Rescission of this transaction;

2. Termination of any security interest in Plaintiff's property created under the transaction;

3. Return of any money or property given by the Plaintiff to anyone, including the Defendant, in connection with this transaction;

4. Statutory damages of no less than $2,000 for the disclosure violations;

5. Statutory damages of no less than $2,000 for Defendants' failure to respond properly to Plaintiff's rescission notice;

6. Treble damages of no less than triple the amount of the finance charge unlawfully paid to the Broker Outside of Closing for RESPA violations;

7. Enjoin Defendants during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining a judicial foreclosure proceeding on the Plaintiffs property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiffs of ownership of the property,

8. Order Defendants to return any and all monies or property given by Plaintiff to anyone, including all Defendants, in connection with the Transaction,

9. Order that, if Defendants continue to fail to respond to Plaintiff's notice of rescission, Plaintiffs have no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of Plaintiff's claims, and order Defendants to accept tender on reasonable terms and over a reasonable period of time,

10. Award Plaintiff actual and statutory damages, injunctive relief, restitution, and disgorgement of ill-gotten gains,

11. Forfeiture of return of loan proceeds,

12. Actual damages in an amount to be determined at trial,

13. Reasonable attorney fee and costs of suit,

14. For such other and further relief as the Court may deem just and proper.

## VERIFICATION

I further affirm that the foregoing statements made by me are true to the best of my knowledge, information and belief and that if any are willfully false, I am subject to penalty.

This the 15th Day of March, 2007

Prepared & Signed by: _____
Marc V. Milline
407 Knollwood Dr.
Davenport, Florida 33837